Cottonwood Financial, LTD, d/b/a The Cash Store, a foreign corporation, Plaintiff-Respondent,

v.

Darcie Estes, Defendant-Appellant.

Court of Appeals

*No. 2009AP760. Submitted on briefs February 2, 2010.*
*—Decided May 25, 2010.†*

2010 WI App 75

(Also reported in 784 N.W.2d 726.)

† Petition for Review held in abeyance.

On behalf of the defendant-appellant, the cause was submitted on the brief of *Eric L. Crandall* of *Crandall Law Offices, S.C.* of New Richmond.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Duffy Dillon* of *Brennan, Steil & Basting, S.C.* of Janesville.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J.   Darcie Estes appeals a judgment and an order confirming an arbitration award and an order compelling arbitration. Estes argues the arbitration agreement was unconscionable and, therefore, unenforceable. We conclude the arbitration agreement was substantively unconscionable because it required Estes to waive her ability to proceed as part of a class. Because an arbitration agreement must be both procedurally and substantively unconscionable to be unenforceable, we reverse and remand for evidentiary findings on procedural unconscionability.

## BACKGROUND

¶ 2.   Estes engaged in serial borrowing from Cottonwood Financial, LTD's The Cash Store, a payday lender. After an initial loan, Estes signed a new loan agreement approximately every two weeks, ultimately entering thirty loan contracts before defaulting. The loans charged an annual interest rate exceeding 521%. In total, Estes received $1,400 cash from The Cash Store and repaid $4,567. At the time of default, she still owed approximately $1,000.

¶ 3.   Cottonwood filed a small claims action to recover Estes's outstanding balance. When Estes counterclaimed alleging violations of the Wisconsin Consumer Act, Cottonwood moved for an order staying the small claims proceedings and compelling arbitration. The circuit court granted the motion, rejecting Estes's argument that the arbitration provision is unconscionable. Following the circuit court's entry of a judgment and an order confirming an arbitration award against her, Estes appeals.[1]

## DISCUSSION

¶ 4.   "Unconscionability is an amorphous concept that evades precise definition." *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 31, 290 Wis. 2d 514, 714 N.W.2d 155. It is a determination to be made in light of a variety of factors not easily unifiable into a formula. *Id.* The underlying principle is one of prevention of oppression or unfair surprise and not of disturbance of allocation of risks because of superior bargaining power. *Id.*, ¶ 32. "Unconscionability has often been

---

[1] We previously denied Estes's petition for leave to appeal the nonfinal order compelling arbitration.

described as the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." *Id.*

¶ 5.   The unconscionability analysis is as follows:

A determination of unconscionability requires a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis. The more substantive unconscionability present, the less procedural unconscionability is required, and vice versa. A court will weigh all the elements of unconscionability and may conclude unconscionability exists because of the combined quantum of procedural and substantive unconscionability. . . .

Determining whether procedural unconscionability exists requires examining factors that bear upon the formation of the contract . . . . The factors to be considered include, but are not limited to, age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, and whether there were alternative providers of the subject matter of the contract.

Substantive unconscionability addresses the fairness and reasonableness of the contract provision subject to challenge. . . .

No single, precise definition of substantive unconscionability can be articulated. Substantive unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party. The analysis of substantive unconscionability requires looking at the contract terms and determining whether the terms are "commercially reasonable," that is, whether the terms lie outside the limits of what is reasonable or acceptable.

*Id.*, ¶¶ 33–36. Whether, under a given set of facts, a contract provision is unconscionable is a question of law that a reviewing court determines independently of the circuit court. *Id.*, ¶ 25.

¶ 6.   In the present case, the circuit court did not conduct an evidentiary hearing or make factual findings regarding procedural unconscionability. Rather, it rejected Estes's unconscionability argument solely by concluding the contract was in no way substantively unconscionable. Estes did, however, allege facts in support of her procedural unconscionability argument in the circuit court, and argues from those allegations on appeal. Because both components of unconscionability must be present to render contract provisions unenforceable, we may affirm if we agree there was no substantive unconscionability. For the same reason, if we conclude the arbitration provision is substantively unconscionable, we cannot conduct the complete unconscionability analysis and must instead remand for factual determinations bearing on procedural unconscionability.

██

¶ 7.   Estes argues the loan agreements' arbitration provision—which actually consists of numerous provisions exceeding one page of primarily fine print—is substantively unconscionable for multiple reasons. We reject her reasons in turn, with one exception. We agree the arbitration provision is substantively unconscionable because it precluded Estes from proceeding as a member of a class.[2]

---

[2] Because the ultimate unconscionability determination involves consideration of the total quantum of both types of unconscionability, we address each of Estes's asserted instances of substantive unconscionability. Nonetheless, as discussed below, we decline to resolve one of Estes's claims because the parties inadequately address the issue.

¶ 8.  Estes argues the arbitration provision is substantively unconscionable because it effectively waives her right to present any claims for injunctive or declaratory relief; restricted her right of appeal; reserves Cottonwood's, but not Estes's, right to proceed in small claims court; contains an illegal governing law clause; waived her right to a trial; waives or limits her rights to conduct discovery, present evidence, or join her claims with other consumers; gives the arbitrator the right to shift the cost of the arbitration to Estes; grants the arbitrator discretion to deny Estes her attorney fees should she prevail; enlarges the potential places of venue; and precludes her from proceeding as a member of a class.

¶ 9.  Inexplicably, Estes neither recites the actual contract language purporting to deny her rights, nor cites to the provisions in the record.[3] She merely asserts the various rights were impinged and, in some instances, misrepresents the contract language by omission. Indeed, there are no provisions denying Estes her rights to bring claims for injunctive or declaratory relief or to appeal. It appears her argument regarding injunctive and declaratory relief is based solely on an ambiguous statement in *Wisconsin Auto Title*, mentioning the unavailability of class-wide injunctive relief. *Id.*, ¶ 73.[4]

---

[3] When listing her various issues, Estes did, however, cite generally to pages 160–198 of her brief's appendix. Not only is such a vague citation unhelpful, it did not reference the appellate record. Citation to an appendix alone is insufficient. Estes's repeated lack of citation to the record violates WIS. STAT. RULES 809.19(1)(d) and (1)(e). All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[4] Estes repeatedly cites only generally to *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, 290 Wis. 2d 514, 714 N.W.2d 155, in support of her arguments. The one time she does

758

¶ 10.   Regarding Estes's small claims argument, the record belies Estes's claim that she was precluded from initiating small claims proceedings. The arbitration provision specifically reserves both parties' right to proceed in small claims court.

¶ 11.   We turn next to the contract's governing law clause, which states: "This Loan Agreement will be governed by the laws of the State of Wisconsin, except that the arbitration provision is governed by the Federal Arbitration Act ('FAA')." The arbitration provision further provides:  "The arbitrator shall apply applicable substantive law consistent with the FAA, applicable statutes of limitation, and shall honor claims of privilege recognized at law." Because the arbitration provision explicitly provides that Wisconsin law shall apply, and because Estes has not identified any provisions of the FAA—much less any that would conflict with Wisconsin law, we are unable to conclude the governing law clause contributes to any substantive unconscionability.

¶ 12.   Estes also argues the arbitration provision is substantively unconscionable because it waived her right to a trial, contrary to Wis. Stat. § 425.301(2) of the Wisconsin Consumer Act, which declares:  "Any right or obligation declared by chs. 421 to 427 is enforceable by action unless the provision declaring it specifies a different and limited effect." The Act does not, however, specify any right to trial. Further, the arbitration agree-

provide a pinpoint citation regarding the injunction issue, she refers us to paras. 77–84. That broad citation, however, fails to include the single relevant paragraph. Estes's lack of pinpoint citations throughout her brief violates Wis. Stat. Rule 809.19(1)(e) and SCR 80.02.

ment does not require consumers to forego their right to proceed under the Act. Rather, it merely shifts the proceedings to a less formal, less expensive, and more expedient forum. Thus, so long as no other rights under the Act are impinged, arbitration may, in fact, be beneficial to consumers. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995). Further, arbitration agreements are presumed valid under both federal and state law. *Perry v. Thomas*, 482 U.S. 483, 489 (1987); *Kemp v. Fisher*, 89 Wis. 2d 94, 100, 277 N.W.2d 859 (1979). Therefore, Estes's general attack on agreements to arbitrate, rather than litigate, fails.

¶ 13.   Estes further assails the arbitration provision because it limits her rights to discovery and presentation of evidence. She does not bother, however, to identify the pertinent contract language or develop any argument. We may reject such undeveloped arguments. *See State v. Flynn*, 190 Wis. 2d 31, 39 n.2, 527 N.W.2d 343 (Ct. App. 1994). In any event, Cottonwood responds that the arbitration provision merely explains in its introduction that discovery may be limited and that the parties have an opportunity to "present some evidence." Any limits will apply equally to both parties. Further, the arbitration provision prohibits the application of any rules of evidence, which simplifies and expands the presentation of evidence, acting as a counterweight to any limits on discovery. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).

¶ 14.   Estes also asserts the arbitration provision is unconscionable because it waives her ability to join her claims with other consumers. Except to the extent this assertion is subsumed within her separate argument pertaining to class action proceedings, Estes de-

760

velops no argument pertaining to joinder. We therefore ignore this assertion. *See Flynn*, 190 Wis. 2d at 39 n.2.

¶ 15.   We next address Estes's claim that the arbitration provision permitted the arbitrator to shift the cost of the arbitration to Estes. Again, Estes does not cite to any specific language in the contract supporting her claim. The arbitration provision states that, regardless of who demands arbitration, Cottonwood was required to advance all expenses, including the filing, administrative, hearing, and arbitrator's fees. Under the agreement, if Estes prevails, she pays no costs. However, if Estes does not prevail, she is required to reimburse Cottonwood for the fees it advanced on her behalf.[5] But, any reimbursement amount may not exceed the amount that would have been assessed as court costs if the dispute had been resolved in state court. Thus, Estes's costs could never be any more in arbitration than they would be in circuit court. Furthermore, the provision actually favors Estes because if she prevails, not only will she not have had to advance any fees, but Cottonwood will be responsible for all costs—not limited by any amount that would have been assessed in circuit court.

¶ 16.   Estes further asserts the arbitration provision granted the arbitrator discretion to deny Estes her attorney fees should she prevail. If true, Estes is correct this would be a significant infringement of her rights under the Wisconsin Consumer Act. The arbitration

---

[5] In this instance, Cottonwood misrepresents the record. The arbitration agreement states the arbitrator "shall require you to reimburse us," whereas Cottonwood represents the contract uses the term "may."

761

provision states: "If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses." Contrary to Estes's assertion, this permissive language does not conflict with the Wisconsin Consumer Act's mandate that costs and attorney fees *shall* be awarded to prevailing consumers. *See* WIS. STAT. § 425.308(1). Rather, the arbitration provision specifically refers here to "statute or applicable law" and, in another section, provides that Wisconsin law shall apply. Reading the arbitration provision as a whole, an arbitrator will be required to award prevailing consumers their costs and attorney fees pursuant to § 425.308 of the consumer act.

¶ 17.   Next, we address Estes's argument that the arbitration agreement's venue provision conflicts with the Wisconsin Consumer Act. Estes claims the arbitration provision authorizes arbitration outside her home county, contrary to WIS. STAT. § 421.401, which she asserts limits venue to a consumer's home county. Estes misstates that statute's limitations. Paragraphs 421.401(1)(a)-(1)(c) permit venue not only in any county where (1) the customer resides, but also in any county where (2) the customer is personally served, (3) collateral securing a transaction is located, (4) the customer sought the money borrowed, (5) the customer obtained the money borrowed, or (6) the customer signed the loan agreement.

¶ 18.   The arbitration provision provides, "The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the transaction under this Loan Agreement occurred, or in such other place as shall be ordered by the arbitrator." While consistent in part with

the consumer act, the arbitration provision permits venues beyond that allowed by the consumer act. Cottonwood concedes that would be impermissible. *See Community Credit Plan, Inc. v. Johnson*, 228 Wis. 2d 30, 36–37, 596 N.W.2d 799 (1999) (noncompliance with the consumer act's venue provision is a serious violation).

¶ 19. Estes does not reply to Cottonwood's arguments that Wis. Stat. § 421.401 is not as limited as Estes claims, or that there was no violation of the statute here because Cottonwood agreed to arbitrate in Estes's home county. Yet, neither do Cottonwood's responses dispute that the arbitration provision is contrary to the Wisconsin Consumer Act. Our analysis here is focused solely on the contract language. Thus, we cannot simply accept Cottonwood's no harm-no foul argument. Further, neither party addresses Wis. Stat. § 421.201(10)(c),[6] which specifically renders invalid any provision "[t]hat fixes venue" in a consumer contract. Because neither party adequately addresses this issue, which is not essential to our ultimate holding, we resolve only that the venue provision arguably supports a conclusion that the arbitration provision is substantively unconscionable.

¶ 20. Finally, we reach, and accept, Estes's argument that the arbitration agreement was substantively unconscionable because it precluded her from proceeding as a member of a class. The arbitration provision states:

> You are waiving your right to serve as a representative, as a private attorney general, or in any other represen-

---

[6] Estes did, however, direct us to Wis. Stat. § 421.201(10)(a), in her argument regarding the arbitration provision's governing law clause.

tative capacity, and/or to participate as a member of a
class of claimants, in any lawsuit filed against us . . . .
[A]ll disputes including any representative claims
against us . . . shall be resolved by binding arbitration
*only* on an individual basis with you. Therefore, the
arbitrator shall not conduct class arbitration; that is,
the arbitrator shall not allow you to serve as a repre-
sentative, as a private attorney general, or in any other
representative capacity for others in the arbitration.
(Capitalization and bold omitted.)

This provision runs afoul of Wis. Stat. § 421.106(1),
which provides, "[A] customer may not waive or agree
to forego rights or benefits under" the consumer act.
Wisconsin Stat. § 426.110(1) explicitly recognizes a
consumer's right to "bring a civil action on behalf of
himself or herself and all persons similarly situated."

¶ 21.  In *Wisconsin Auto Title*, 290 Wis. 2d 514,
¶ 69, our supreme court held an arbitration provision
was substantively unconscionable because it was overly
one-sided, but further "comment[ed] that other factors
compound[ed] the substantive unconscionability." One
of those additional factors was the waiver, by silence on
the issue, of the Wisconsin Consumer Act right to
proceed as a member of a class seeking injunctive relief.
*Id.*, ¶ 73. The supreme court found the waiver unac-
ceptable because it "limits the meaningful remedies
available to the borrower." *Id.* The court further ob-
served in a footnote that "[m]any other courts have
found unconscionable *express* prohibitions on class ac-
tions claims." *Id.*, n.61 (listing cases) (emphasis added).

¶ 22.  We subsequently addressed a similar issue
in *Coady v. Cross Country Bank, Inc.*, 2007 WI App 26,
¶ 46, 299 Wis. 2d 420, 729 N.W.2d 732, where an
arbitration agreement expressly prohibited all class
proceedings. There, we noted *Wisconsin Auto Title's*

conclusion that the prohibition of class proceedings seeking injunctive relief under the consumer act contributed to substantive unconscionability. *Coady*, 299 Wis. 2d 420, ¶ 47. We then concluded, "We are . . . persuaded by what appears to be a growing minority of courts that a waiver of class-wide relief is a significant factor (and in at least one instance a determinative factor) in invalidating an arbitration provision as unconscionable." *Id.*, ¶ 48. Ultimately, we held the arbitration provision was substantively unconscionable based on the provision's requirement that Delaware law be applied and the prohibition of all forms of class-wide relief. *Id.*, ¶ 48 n.15, ¶ 50.

¶ 23. Like in *Coady*, the arbitration provision here explicitly prohibits a consumer from proceeding as part of a class. This is a "significant factor" indicating the arbitration agreement is unconscionable. As we explained in *Coady*, the availability of class-wide relief is often the only effective means of vindicating consumer rights. *Id.*, ¶ 48. And, absent a mechanism for class proceedings, many consumers are unlikely to realize they have been wronged because they do not know the defendant's conduct is illegal. *Id.* Finally, the prospect of class-wide relief provides an important deterrent effect on merchants subject to the Wisconsin Consumer Act. *Id.* Permitting predispute waivers of class proceedings would be contrary to the Act's purpose of protecting consumers from unfair practices. *See* WIS. STAT. § 421.102. We therefore conclude the arbitration provision is substantively unconscionable.[7]

---

[7] The parties in their briefs also address a federal preemption issue, which might arise if the State prohibited arbitration agreements as a whole. The issue was also mentioned in both *Wisconsin Auto Title*, 290 Wis. 2d 514, ¶¶ 77–85, and *Coady v. Cross Country Bank, Inc.*, 2007 WI App 26, ¶¶ 51–54, 299

765

¶ 24. A contract provision is rendered unenforceable when there is a sufficient quantum of both procedural and substantive unconscionability. Estes asserts procedural unconscionability existed for numerous reasons, including those relied on in *Wisconsin Auto Title,* 290 Wis. 2d 514, ¶ 7. In combination with the class-proceedings prohibition's significant restriction on available consumer act relief, the alleged procedural unconscionability would support a conclusion that the arbitration provision is unconscionable. We therefore remand to the circuit court with directions to make factual determinations on procedural unconscionability and, consistent with this decision, reevaluate whether the arbitration provision is unconscionable and unenforceable.[8]

---

Wis. 2d 420, 729 N.W.2d 732. Our holding here presents no such issue. The consumer act's prohibition of class-status waivers does not effectively act as a prohibition against all arbitration. In other words, class arbitration is something that is available. Our supreme court posed, but did not address, this question whether class arbitration is possible in *Wisconsin Auto Title,* 290 Wis. 2d 514, ¶ 73. The American Arbitration Association (AAA) has created a set of supplementary rules applicable to class arbitration. Significantly, the rules require the AAA to maintain a class arbitration docket on its website, and provide that the "presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations," and that all awards "shall be publicly available." American Arbitration Association, Supplementary Rules For Class Arbitration, Rules 9.(a), 9.(b), 10.(b) (Jan. 1, 2010), available at *http://www. adr.org/sp.asp?id=21936.*

[8] Estes also argues on appeal that Cottonwood forfeited its right to arbitration by first proceeding in small claims court. That argument has no merit, for the reasons stated in Cottonwood's brief.

¶ 25. As we have noted, Estes's brief violated the rules of appellate procedure by failing to provide proper citation to the appellate record or to the relevant case law. While not bothering to properly cite within it, Estes also submitted an excessively long, 230–page appendix. Including nearly the entire record in the appendix defeats the very purpose of an appendix. Further, her brief's table of authorities fails to comply with WIS. STAT. RULE 809.19(1)(a), which requires "reference to the pages of the brief on which [the authorities] are cited." It is unacceptable to merely indicate "passim," without indicating even the first page at which an authority appears in the brief. Nor is it acceptable to list in the table nine chapters of the Wisconsin statutes as a single authority, or, for that matter, a single chapter, or an entire code, or multiple sections of a federal act—all of which Estes did here, and all of which direct us only to "passim."

¶ 26. Further, seeing as we are already expending judicial resources explaining how Estes wasted judicial resources in this appeal, we may as well be thorough. We therefore emphasize that rare is the case where it is acceptable, much less wise, for an appellant to merely file a letter in lieu of a reply brief, indicating she will stand on the arguments presented in her initial brief. Indeed, had Cottonwood not both failed to address *Wisconsin Auto Title*, and responded with a pinpoint citation to *Coady* and misrepresented that case by omission, Estes's appeal would have failed—due to counsel's failures rather than the merits.

¶ 27. We sanction Estes's counsel, Eric Crandall, $150 for his multiple violations of the rules of appellate

procedure. *See* WIS. STAT. RULE 809.83(2). The penalty shall be paid to the clerk of this court within thirty days of this decision. Further, Estes shall not recover from Cottonwood any WIS. STAT. RULE 809.25(1) appellate costs incurred printing and assembling copies of her appendix.

*By the Court.*—Judgment and orders reversed and cause remanded with directions; attorney sanctioned; costs disallowed in part.